■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT DIXON and WARREN CHRISTOPHER, Appellants. — Appeals by defendants from two judgments (one as to each of them) of the County Court, Westchester County, both rendered November 6, 1978, convicting them of burglary in the third degree and criminal possession of stolen property in the second degree, upon a jury verdict, and imposing sentences. Judgments reversed, on the law, and new trial ordered. During the *voir dire* of prospective jurors, the trial court advised defense counsel that one of the jurors may have observed defendant Christopher in handcuffs while Christopher was being escorted to the lock-up. The trial court informed the defense that the juror might be challenged peremptorily, and that in the event the defense later had exhausted the available peremptory challenges, the trial court would in its discretion allow an additional peremptory challenge. The juror was then challenged peremptorily by the defense. Subsequently, an additional peremptory challenge was requested by the defendants after their available peremptory challenges had been exercised. However, the trial court denied the request. We think the denial of the request was error. In the first instance, the defense used a peremptory challenge to excuse the juror who could have seen defendant Christopher in handcuffs — a position prejudicial to him *(People v Dell'Orfano,* 72 AD2d 749, 751; *People v Gonzalez,* 55 AD2d 656). In doing so, the defense relied on the court's statement that an additional peremptory challenge would be allowed in its discretion. Hence, it was error not to grant an additional challenge when the defense had exhausted its peremptory challenges. Moreover, the Trial Judge's failure to allow the additional peremptory challenge, after initially suggesting that he would, was particularly egregious since Christopher was one of three codefendants standing trial and therefore did not have unfettered use of the 10 peremptory challenges allotted to the defense as a whole. (See CPL 270.25, subd 3.) Mollen, P. J., and Mangano, J., concur.

Hopkins, J., concurs, with the following memorandum: I am entirely in accord with my colleagues for reversal and a new trial because of the denial of an additional peremptory challenge. However, I believe also that the use of peremptory challenges by the prosecution to excuse all the black members of the jury panel was a violation of the defendants' constitutional rights. Defense counsel objected to the use of peremptory challenges to the three black prospective jurors. The trial court did not inquire of the prosecutor as to the exercise of the challenges, indicating that the discretion of the prosecutor was beyond inquiry. However, the court did state that the background of one of the black jurors was "impeccable". Consequently, I am of the view that the prosecutor's conduct raised questions which required inquiry by the court with respect to the prosecutor's discretion *(People v Thompson,* 79 AD2d 87). Racial differences should not result in the exclusion of members of a particular race from sitting as jurors. Our court has condemned any appeal to a jury based on racial differences: "The vice of such an argument is not only that it is predicated on a false and illogical premise, but more important it is divisive; it seeks to separate the racial origin of witnesses in the minds of the jury, and to encourage the weighing of testimony on the basis of the racial similarity or dissimilarity of witnesses. The argument offends the democratic and logical principle that race, creed or nationality, in themselves, provide no reason for believing or dis-

believing a witness' testimony." *(People v Hearns,* 18 AD2d 922, 923; see, also, *People v Burris,* 19 AD2d 557.) That condemnation has been echoed by the Appellate Division, First Department *(People v Fisher,* 19 AD2d 613; *People v Matthews,* 33 AD2d 679; *People v Williams,* 40 AD2d 812), the Fourth Department *(People v Burney,* 20 AD2d 617), and by the Second Circuit *(McFarland v Smith,* 611 F2d 414, 417-419). Certainly, the reasoning of these decisions applies even more strongly to the selection of jurors. For this reason, too, I would reverse and order a new trial.

Cohalan, J., dissents and votes to affirm the judgments, with the following memorandum: By statute (CPL 270.25, subd 2, par [c]) a defendant in a trial by jury is permitted to exercise 10 peremptory challenges on the trial of an indictment for a class D or E felony. In pertinent part, subdivision 2 reads as follows: "Each party must be allowed the following number of peremptory challenges: * * * (c) Ten for the regular jurors in all other cases ['D' and 'E'], and two for each alternate juror to be selected." Subdivision 3 reads: "When two or more defendants* are tried jointly, the number of peremptory challenges prescribed in subdivision two is not multiplied by the number of defendants, but such defendants are to be treated as a single party. In any such case, a peremptory challenge by one or more defendants must be allowed if a majority of the defendants join in such challenge. Otherwise, it must be disallowed." During the selection of jurors, the defendants exhausted their 10 peremptory challenges. Before doing so, however, Dixon's attorney had asked the court to grant an additional challenge. The court said it would "use [its] discretion" on the request. After exhaustion, however, the request for an additional challenge (participated in by Dixon and Christopher only) was denied. On this premise the majority has reversed the judgment of conviction and has ordered a new trial. The facts of the case reveal that the defendants were caught in the act of burglary in broad daylight. They were carrying the fruits of the crime when apprehended. The evidence against them was overwhelming. If there was an abuse of discretion by the Trial Justice, it was harmless beyond a reasonable doubt *(People v Crimmins,* 36 NY2d 230), and it is difficult to conceive how an eleventh challenge could possibly have changed the ultimate result. In the concurring memorandum of Mr. Justice Hopkins, allusion is made to the peremptory challenges directed by the prosecutor to the three black prospective jurors on the panel, citing *People v Thompson* (79 AD2d 87). In *Thompson,* as with Jack Sprat and his wife in the nursery rhyme, the prosecutor "licked the platter clean" of all 12 prospective black jurors. I view that instance as one decided on the unusual fact pattern in that case, and thus *ad hoc* in nature; and do not feel constrained to follow it. Instead, I would adhere to the statutory definition of a peremptory challenge (CPL 270.25) which states that it "is an objection to a prospective juror for which no reason need be assigned". Under the factual circumstances before us, to allow the appealing defendants to have a second trial is to me a complete waste of judicial time and manpower. I would affirm.

---

* There are two defendants on this appeal. The appeal of a third defendant (Steven Hines) was severed. Hines did, however, participate in the trial.