OPINION OF THE COURT
Joseph Harris, J.
Petitioner moves for a judgment pursuant to CPLR article 78 directing the respondent Commission to immediately pay over to the petitioner the sum of $50,000 and prohibiting respondent from imposing any conditions on the $50,000 grant. The relief sought by petitioner is in the nature of mandamus to compel and prohibition.
*1085 The Commission for Siting Low-Level Radioactive Waste Disposal Facilities is a New York State agency established by Laws of 1986 (ch 673). The purpose of this Commission is to create, by January 1, 1993, low-level radioactive waste management facilities to be constructed and operated by the New York State Energy Research and Development Authority. (L 1986, ch 673 [Low-Level Radioactive Waste Management Act].)
In December of 1988 the Siting Commission made public that it had chosen 10 "candidate areas” for proposed construction of low-level radioactive waste management facilities. One of these "candidate areas” was located within Cortland County.
On January 17, 1989 the New York State Legislature passed the Aid to Localities Budget Bill. This bill made possible funding for the Siting Commission by providing: "For grants not to exceed $50,000.00 each to counties within the boundaries of which a potential low-level radioactive waste disposal facility candidate site has been identified, pursuant to Chapter 673 of the Laws of 1986.”
On June 27, 1989, the Aid to Localities Budget Bill was amended. This amendment to the law deleted the "not to exceed” language and added "per each site.” The bill then read: "For grants of $50,000.00 per each site to counties within the boundaries of which a potential low-level radioactive waste disposal facility candidate site has been identified pursuant to Chapter 673 of the Laws of 1986.”
The petitioner contends that this statutory amendment to the budget enactment reflects the Legislature’s clear intent to eliminate any discretion on the part of the Siting Commission in controlling the amount of money allocated to counties under the budgetary grant. In support of this contention petitioner has submitted affidavits by Assemblyman Clarence D. Rappleyea, Jr., and Senator James L. Seward concerning legislative intent.
It is clear that both affidavits fail to provide any determinative "indication of what the legislative body as a whole intended”. (Matter of Consolidated Edison Co. v Department of Envtl. Conservation, 71 NY2d 186, 195, n 4 [1988].) The views of a single legislator are not necessarily revealing or determinative of legislative intent. (Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 159 [1987].)
The public policy of New York State has long been that public moneys be properly accounted for. (State Finance Law *1086 § 101 et seq.) Any intention to alter such a rule must "emanate from the Legislature and may not be imputed to the Legislature in the absence of a clear manifestation of such intent”. (Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 157, supra.) Consequently, "[i]t is assumed that the Legislature will not abolish a long-standing policy without using explicit words to show its intention” (McKinney’s Cons Laws of NY, Book 1, Statutes § 126). In the absence of any clear statement of legislative intent to eliminate oversight by the Siting Commission, the respondent has a clear obligation to ensure that moneys appropriated are properly spent. Had the Legislature intended to limit the Commission’s oversight authority with respect to the budgetary grant, it could easily have done so. Instead there is no mention, whatsoever, of the Commission’s oversight authority in the statutes at issue. Neither is there any evidence in the legislative history that the Legislature intended to so limit the Commission’s authority. Consequently, the court finds that the budgetary enactments in no way impair respondent’s obligation to oversee the proper and lawful expenditure and allocation of the grant moneys.
Petitioner further contends that respondent is creating rules where it lacks authority to do so. In this regard, petitioner contends that the July 7, 1989 letter of Douglas Eldridge, general counsel to the Commission, whereby the Commission provided petitioner with a grant application form and instructions for same, constitutes a "rule” within the meaning of the New York State Administrative Procedure Law. A review of the July 7 letter reveals that it was merely a vehicle used to provide petitioner with a grant application form and instructions for same.
Petitioner erroneously characterizes the July 7, 1989 letter as "creating rules.” In this regard, section 102 (2) (b) (iv) of the State Administrative Procedure Act specifically exempts such general policy statements and instructional material from its definition of "rule”.[1]
Having determined that the Commission’s July 7, 1989 letter does not constitute rule making, this court need not address petitioner’s contention that the Commission lacked authority to promulgate such rules and that it promulgated *1087 rules not in accord with the requirements of the State Administrative Procedure Act.
Under these circumstances the petitioner is not entitled to the extraordinary remedy of prohibition, for prohibition is only appropriate " 'when there is a clear legal right’ * * * and only when the body or officer 'acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction’ ”. (Matter of Nicholson v State Commn. on Judicial Conduct, 50 NY2d 597, 605-606 [1980]; Matter of Dondi v Jones, 40 NY2d 8, 13 [1976].) Here, petitioner has failed to demonstrate that respondent lacks jurisdiction to verify the petitioner’s expenditures. Moreover, petitioner has not shown that respondent is acting beyond the scope of its authority.
Petitioner further errs with respect to its claimed entitlement to mandamus. Mandamus "lies only where the right to relief is 'clear’ and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion.” (Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d 88, 96 [1981].) Furthermore, the act sought to be compelled must be ministerial, nondiscretionary and nonjudgmental as well as premised upon specific statutory authority mandating performance in a specific manner. (Matter of Brown v New York State Dept. of Social Servs., 106 AD2d 740, 741 [3d Dept 1984].) Here, there is no obligation on the part of the Commission to disburse money to "candidate area” counties merely because the counties demand grant money. To the contrary, the Commission has a clear obligation to ensure that grant moneys disbursed are properly accounted for. To fulfill this obligation the Commission requires that the counties submit a simple grant application form, which verifies the applicant’s entitlement to grant funds.[2] Consequently, since petitioner has failed to demonstrate that the action sought is merely ministerial and nondiscretionary, mandamus is inappropriate.
Accordingly, for the foregoing reasons, the relief sought by petitioner is denied and the petition is hereby dismissed.

. Section 102 (2) (b) (iv) of the State Administrative Procedure Act specifically excludes from its definition of rules "forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory”.

. It is petitioner’s contention that it has no obligation to submit a grant application to the Commission. Consequently, while petitioner has submitted an original application for which it received $33,138.62, petitioner refuses to submit further application for the remaining $16,861.38 claimed.